**The following constitutes
the order of the court. Signed June 17, 2013**

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                                    Case No. 11-71508 MEH
VANHSY VONGKHAMSOMPHOU,                  Chapter 13

                    Debtor/
_____

LIENG SOUVANNASANE AND
PHETMANY SOUVANNASANE,                   Adv. No. 12-04033 AH
          Plaintiffs
v.

VANHSY VONGKHAMSOMPHOU,

                    Defendant/
_____
```

<u>DECISION AFTER TRIAL</u>

   Plaintiffs Lieng and Phetmany Souvannasane ("Plaintiffs") seek to have a judgment obtained in a state court action (the "Claim") exempted from discharge in the bankruptcy case of Vanhsy Vonghamsomphou ("Debtor"). Plaintiffs seek relief pursuant to

1

Bankruptcy Code[1] §523(a)(2)(A), asserting that the claim was incurred based on Debtor's fraud. A trial was held on the adversary proceeding on March 22, 2013. Following trial, the parties requested additional briefing which was completed on May 31, 2013 and the matter was taken under submission. Plaintiffs are represented by Alden Knisbacher, and at trial by Greg Groeneveld. Debtor represents herself in this adversary proceeding.

Background

The Claim arises from a real estate transaction between the parties. In 2006, Debtor placed a for sale sign in front of her house on Western Avenue in Sacramento, CA (the "Property"). At the time, Debtor understood the Property to be worth approximately $70,000, and it had an outstanding mortgage against it of approximately $300,000. Plaintiffs indicated an interest in purchasing the Property through mutual connections in the Laotian community.

In June 2006, the parties entered into an oral agreement whereby Plaintiffs would pay $65,000 to Debtor, and Debtor would sell the house to them. In furtherance of this agreement, Debtor moved out and Plaintiffs moved into the Property. Plaintiffs began paying Debtor $2,109 per month which Debtor used for the monthly mortgage

---

[1] 11 U.S.C. §§ 101 et seq., referred to herein as the "Bankruptcy Code."

2

payment.  No testimony was provided indicating whether there was agreement between the parties on how the outstanding mortgage would be addressed—or whether it was even discussed.[2]  Then, in early 2007, $65,000 was paid to Debtor on Plaintiffs' behalf for the Property.  Once paid, Plaintiffs began making requests to Debtor that the Property be transferred to them.

Debtor's initial response to these requests was to provide a letter dated January 18, 2007 (the "Letter").  Debtor testified that the Letter was prepared by her daughter at her request, signed by her and notarized.  The Letter was admitted into evidence and provides that if Debtor dies, she wishes for Phetmany Souvannasane ("Phetmany", one of the Plaintiffs) "to have the house and she has to take over the payment of the house that still remain."  Debtor testified that she provided the Letter to give Plaintiffs comfort that they would receive the house.

Plaintiffs were not comforted and continued to request transfer of the house.  On January 24, 2007, a meeting was held between Plaintiffs and Debtor with other third-parties present.  During that meeting, a document evidencing the sale of the Property was

---

[2] From testimony at trial, it appears that Debtor and Plaintiffs may have attempted to enter into an informal written agreement at this time.  However, no agreement was entered into evidence and no testimony was provided as to its terms.  A copy of a writing was presented to a witness during trial.  As it is written in Laotian, and not translated, the court has no further information.

3

created and signed (the "Evidence Report"). The original document is in Laotian. A copy of it and a translation were admitted as evidence. The document is titled "Evidence Report" and consists of four sentences. It states: "Cash, in the amount of $65,000, has been paid to [Debtor] from [Phetmany]. The family of [Debtor] shall no longer have any dealings with or ownership of the aforementioned property." The Evidence Report is signed by Debtor and Phetmany. At trial, Debtor testified that she signed a blank piece of paper and that the Evidence Report was later written on it without her knowledge or consent. The court does not find Debtor's testimony on this point credible. Debtor's testimony is directly contradicted by the testimony of Sengkosu Nanmsaly, a third party, identified as a mutual friend of the parties. Mr. Nanmsaly testified that he dictated the Agreement to plaintiff Lieng Souvannasane ("Lieng"). Lieng drafted the Evidence Report because he has nice penmanship. And that he was present with both parties when the Evidence Report was signed.

Mr. Nanmsaly also testified that he advised Plaintiffs that they needed to do everything "according to the books" so that the transfer would not be illegal, and that the parties needed to get the bank involved to make it legal and transfer title. This appears to be the first point at which involving the bank in the

4

sale arose.  Prior to this point, it appears that Debtor considered the $65,000 a down payment and title would transfer once the mortgage was paid, and that Plaintiffs considered the payment the purchase amount, and that they would take over payments on the mortgage.  It is not clear that either party discussed or made any representations regarding treatment of the mortgage or when title would be transferred once the $65,000 was paid.

At their request, Debtor went to the title company with Plaintiffs.  She signed a grant deed (the "Grant Deed") transferring the Property to Dovangchanh Khamvongsa, the nephew of Lieng ("Nephew").  The Grant Deed was recorded on February 22, 2007.[3]  Lieng testified that they sought to have Debtor meet them at the bank to show all the documents and complete the transfer but that the Debtor did not come to the bank.  Debtor testified that she did not go to the bank because she was leaving for Laos to visit her sick mother.  Debtor's testimony on this point is questionable.

Plaintiffs' intention appears to have been to have the Property held in Nephew's name and for Nephew to obtain a new loan

---

[3] Plaintiffs challenge admissibility of the Grant Deed as hearsay and on relevance grounds.  The court finds that the Grant Deed is admissible and not hearsay pursuant to Federal Rule of Evidence 803(14) as a record of documents affecting an interest in property.  The Grant Deed is admissible to prove the contents of the document and due execution and delivery.

5

refinancing the original mortgage.  A loan was not approved by the bank.  The testimony is not clear on what basis a loan was not approved, whether it was because of the nephew's credit, the terms of the agreement, or—as Plaintiffs appear to assert—because Debtor was not present at the bank.[4]  Following the bank's denial, Nephew grant deeded the Property back to Debtor, four days after the original Grant Deed.

Plaintiffs continued to request that Debtor transfer the Property to them.  Ultimately, Lieng told Debtor that he would not continue to make the monthly payments if she would not transfer the title.  At some point, it appears Plaintiffs quit making the monthly payments to Debtor for application to the mortgage.  Debtor then shut off the water and Plaintiffs moved out of the Property.

In 2008, Plaintiffs filed suit against Debtor in Sacramento County Superior Court.  A first amended complaint (the "Complaint") was filed in July, 2010.  The Complaint included five separate causes of action for recovery of the $65,000, plus related damages.  Debtor entered into a Stipulation for Entry of Judgment and Order

---

[4] The court finds that there are numerous reasons that this transaction or a loan would not be approved by a bank.  Plaintiffs paid the entire value of the Property to Debtor.  Neither party contemplated that any portion of these funds would be paid to the bank in order to obtain their consent to a transfer or approval of a short sale.  Further testimony at trial was that Plaintiffs were receiving welfare during this period and that a portion of the down payment was provided by third-parties.  Nephew, who appears to have been seeking the loan, lived in Wisconsin, so the Property would not have been his primary residence.

6

Thereon (the "Stipulated Judgment") in September, 2010.  Plaintiffs seek to have the Stipulated Judgment determined to be nondischargeable on the basis of collateral estoppel, or alternatively, request the court find the Stipulated Judgment nondischargeable based on the evidence presented at trial pursuant to Bankruptcy Code § 523(a)(2)(A).

Analysis

1. <u>Stipulated Judgment is not sufficient to establish collateral estoppel.</u>

Plaintiffs assert that the court should find the Claim nondischargeable on the basis of collateral estoppel.  In support of their position, Plaintiffs cite to *Malkoskie v. Option One Mortgage*, 188 Cal. App. 4th 968 (2010), for the proposition that "[a] stipulated judgment normally concludes or determines all matters put into issue by the pleadings, unless the parties agree to restrict its scope by expressly withdrawing an issue from that judgment."  This principle addresses the finality of the judgment, but does not satisfy all requirements for collateral estoppel.

Collateral estoppel requires that (1) the issue sought to be precluded from litigation must be identical to that decided in the former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily

7

decided in the former proceeding; (4) the decision in the former proceeding must have been final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001) (citation omitted).

The Complaint included five separate causes of action for recovery of the $65,000, plus related damages. Not all of the causes of action asserted would provide a basis for finding the Claim nondischargeable pursuant to § 523(a)(2)(A). The Stipulated Judgment provides a summary statement that Plaintiffs filed a complaint "alleging certain claims against the Defendant in connection with Plaintiffs' payment of $65,000 for purchase of [the Property]. Purchase was not consummated and Defendant did not return the $65,000 paid by Plaintiffs." These are the only factual findings incorporated into the Stipulated Judgment.

The "actually litigated" requirement is called into question by the Stipulated Judgment. Ordinarily, stipulated judgments do not provide a basis for collateral estoppel as the purpose of a stipulated judgment is to avoid litigation. *Berr v. FDIC (In re Berr)*, 172 B.R. 299, 306 (9th Cir. BAP 1994). A stipulated judgment may be given preclusive effect if it was the intent of the parties, and the parties' intent may be inferred from the judgment

8

or the record.  *Id.*  In a dischargeability proceeding, the terms of a stipulated judgment are important.

> If the stipulation does no more than assess the amount of the judgment without any indication of the facts on which the judgment is based, then there is not a sufficient record on which to base collateral estoppel. *See, e.g. Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867-68 (1955)(consent decree for dismissal with prejudice did not refer to the parties' intention as to preclusion, particularly as to future litigation).

*Id.* at 307.

Here, the findings are generic:  "Purchase was not consummated and Defendant did not return the $65,000 paid by Plaintiffs."  This is insufficient to establish that the central issues in dispute were actually litigated—specifically, that Debtor knowingly made a false representation with the intent and purpose of deceiving Plaintiffs.  So, the court finds that collateral estoppel does not apply to determine nondischargeability.

2. <u>Whether the requirements of § 523(a)(2)(A) are satisfied.</u>

Section 523(a)(2)(A) excepts from discharge a debt to the extent it is obtained by false pretenses, a false representation or actual fraud.  The Ninth Circuit has held consistently that a creditor must demonstrate five elements to prevail on any claim arising under §523(a)(2)(A).  *See, e.g. Anastas v. American Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1284 (9th Cir. 1996) (quoting *Britton v.*

9

*Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991). The five elements, each of which the creditor must demonstrate by a preponderance of the evidence, are:

    (1) the debtor made the representations;
    (2) that at the time he knew they were false;
    (3) that he made them with the intention and purpose of deceiving the creditor;
    (4) that the creditor relied on such representations;
    (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996).

It is clear that Debtor made an agreement to sell the Property to Plaintiffs, that Plaintiffs relied on this agreement, and that Plaintiffs sustained the loss of the $65,000 paid to Debtor as a result. Testimony at trial focused on the second and third factors.

Based upon testimony of Debtor and Lieng, the parties entered into an oral agreement that was later documented. The basic terms of the oral agreement appear to be (a) that Debtor would sell the Property to Plaintiffs for $65,000 and (b) that while Plaintiffs were accumulating the $65,000, they would provide Debtor with the

10

monthly mortgage payment that she then submitted to the bank.  The
original agreement is incomplete.  It did not address what would
happen after the $65,000 was paid.  Specifically, whether Debtor
would transfer title while the mortgage remained in her name[5],
assign the mortgage to Plaintiffs[6], or continue to forward the
payments with title to be transferred once the loan was satisfied.

Debtor's Letter supports a finding that Debtor believed she
would continue to hold title until the mortgage was paid in full
and title would then transfer to Plaintiffs.  Plaintiffs did not
provide convincing evidence that Debtor represented she would
transfer title to Plaintiffs upon receipt of the $65,000 while the
mortgage remained outstanding.

Plaintiffs rely upon the Evidence Report to establish a
representation was made that Debtor would transfer the title and
the mortgage to Plaintiffs immediately upon payment.  The Evidence
Report documents receipt of the $65,000 and states that going
forward Debtor will "no longer have any dealings with or ownership
of the aforementioned property."  But based on the testimony of Mr.
Nanmsaly, the court's impression is that the Evidence Report was a
negotiated resolution of the dispute that arose after payment of

---

[5] Transfer of collateral without the lender's consent in a secured lending agreement normally constitutes a breach of the agreement.
[6] The potential difficulties in assigning the mortgage are discussed in footnote 4.

11

the $65,000. Further, as the Evidence Report was created after Plaintiffs' paid the $65,000, they could not have relied upon it in paying the funds to Debtor.

In addition, Plaintiffs seek to infer Debtor's fraudulent intent based on Debtor's failure to transfer the Property upon request and failure to meet Plaintiffs at the bank. The facts show that after the Evidence Report was signed, Debtor acted to transfer the Property by signing the Grant Deed. The court declines to infer Debtor's intent to defraud from her failure to meet at the bank due to the lack of evidence that Debtor represented she would do this and the numerous obstacles to transfer of the mortgage to Plaintiffs.

Plaintiffs did not demonstrate by a preponderance of the evidence that the Debtor knowingly made a false representation with the intent and purpose of deceiving Plaintiffs. On this basis, the Claim is found to be dischargeable in Debtor's chapter 13 case.

Contemporaneous with entry of this memorandum, the court will issue a judgment finding Plaintiff's Claim dischargeable.

**END OF DECISION**

12

```
 1                         COURT SERVICE LIST
 2    Alden Knisbacher
      Knisbacher Law Offices
 3    1611 Telegraph Ave. #920
 4    Oakland, CA 94612

 5    Vanhsy Vongkhamsomphou
      4800 Kokomo Dr.#3812
 6    Sacramento, CA 95835
```

Case: 12-04033    Doc# 47    Filed: 06/17/13    Entered: 06/17/13 15:28:07    Page 13 of 13